PEACOCK COAL COMPANY, Appellee, v. GAINES COAL COMPANY et al., Appellants.

APRIL 3, 1928.

REHEARING DENIED NOVEMBER 16, 1928.

*Stipp, Perry, Bannister & Starzinger*, for W. D. Israel, appellant.

*C. A. Baker* and *Mason Ladd*, for appellee.

DE GRAFF, J.—Plaintiff sold and delivered to the defendant Gaines Coal Company certain quantities of coal for which payment has not been made. There is no dispute about this. Is defendant Israel liable for the payment?

On the factual side it is shown that, about November 1, 1925, E. M. Gaines, under the trade name of E. M. Gaines Coal Company, was conducting a retail coal business on East Court Avenue, Des Moines, Iowa, and that appellant Israel entered into negotiations with Gaines to purchase an interest in said business. Israel did advance Gaines $1,000, and for security took an assignment of certain accounts receivable for the refunding of this money. On or about the 20th of November, 1925, Israel informed Gaines that the property did not look good to him, and told Gaines that he wanted his money back. The reason assigned by Israel was that there was insufficient capital, but he further testified:

"If he [Gaines] would organize a stock company, I would purchase stock in that company. Mr. Gaines agreed to that

proposition, and agreed to the incorporation, and incorporation was ordered under the laws of the state of Delaware, for the reason that it was considerably less expensive. After our application for a charter in the state of Delaware, Mr. Gaines received a certificate of incorporation.''

The issued certificate of incorporation of the Gaines Coal Company from the office of the secretary of state of the state of Delaware bore date November 24, 1925, and was duly recorded November 25, 1925, in the office of the recorder of deeds at Wilmington, New Castle County, Delaware. This date, November 24, 1925, is important in the consideration of this cause. It was an important date on the trial in the district court, for the reason that the liability of the defendant Israel as the partner of Gaines in the E. M. Gaines Coal Company, prior to November 24, 1925, was viewed as a fact question, and was submitted to the jury for determination; whereas, the liability of the defendant Israel for coal sold and delivered by plaintiff to the Gaines Coal Company subsequently to that date was determined by the trial court, as a matter of law. The jury returned its verdict for the defendant Israel, and in so doing must have determined that, during that period, Israel was not the partner of Gaines. With this phase of the case we are not concerned, on this appeal. The trial court ruled the question of law in favor of the plaintiff, and directed a verdict against the defendant Israel for coal sold and delivered subsequent to November 24, 1925, on the theory that Israel, purporting to act for the Delaware corporation unlicensed in the state of Iowa, was individually liable for the coal sold and delivered to the Gaines Coal Company.

It is with this ruling that this appeal is concerned. In brief, the question is: Was the liability of Israel for the coal sold and delivered by plaintiff after November 24, 1925, a question of fact, to be determined by the jury? We think not. In the first instance, plaintiff bottomed his right to recover on the pleaded fact that the Gaines Coal Company was a partnership, composed of E. M. Gaines and W. D. Israel. By an amendment to his petition, plaintiff alleged that Gaines and Israel entered into an agreement to incorporate under the name of the Gaines Coal Company, and in pursuance of said agreement procured a charter of incorporation from the state of Delaware, but that the

said defendants did not in any manner comply with the laws of the state of Iowa for the purpose of conducting their business as a corporation in the state of Iowa; that the articles of incorporation were not filed with the secretary of state of Iowa; and that said articles were never recorded with the recorder of Polk County, Iowa, and no notice was ever published, as provided by Section 8357, Code of 1924, and no permit was ever obtained from the state of Iowa, as provided by Chapter 386, Code of 1924.

It is further alleged that the Gaines Coal Company did not, at any time, issue stock for value to any party; that neither E. M. Gaines nor W. D. Israel was issued stock in the Gaines Coal Company, and that they did not make a valid subscription for stock, and did not become a part of the Gaines Coal Company, a purported corporation of Delaware; that there never was a transfer to the purported Delaware corporation of the property owned by Gaines or Israel, or both of them, in the coal business carried on by them in Des Moines, Iowa; that the purported corporation in the state of Delaware never entered into a contract or arrangement with Gaines and Israel or the E. M. Gaines Coal Company by which said parties would carry on the business of selling coal for the Gaines Coal Company, the purported Delaware corporation; that the said Gaines and Israel did conduct a business of buying and selling coal at 706 East Court Avenue, Des Moines, but that the business as operated did not then nor at any time become identified with or legally connected with the Gaines Coal Company, the purported Delaware corporation; that neither Gaines nor Israel held any stock, by assignment or otherwise, in the Gaines Coal Company, a purported corporation of Delaware, and received no authority from the officers of said corporation, if any, to do business for said corporation; but that E. M. Gaines and W. D. Israel were individually and together conducting said business as a joint adventure, but did not at any time become legally connected with the Gaines Coal Company, a purported corporation of Delaware; that Gaines and Israel did, in fact, conduct the coal business jointly under the name of the Gaines Coal Company, and are liable individually for all debts contracted while so conducting that business, and for the debt in suit, owed to the plaintiff, Peacock Coal Company.

The record amply sustains the allegations of fact. It is disclosed that Gaines and Israel were the organizers and promoters of the Gaines Coal Company, a Delaware corporation, and there is no escape from the conclusion that the Delaware corporation was promoted by them for the purpose of securing a permit in the state of Iowa for said Delaware corporation to transact business in the state of Iowa. They did attempt to secure this permit, but failed. However, they did operate the business of buying and selling coal in Des Moines, Iowa, as the Gaines Coal Company, and attempted to exercise rights under the corporate franchise of the purported Delaware corporation, which was chartered for the primary purpose of carrying on the business of wholesalers and retailers of coal and other products, and to make contracts with coal companies with reference to handling and selling coal on such terms as may be agreed upon.

The articles of incorporation recited that the authorized capital stock was $25,000, divided into 250 shares of $100 each; that the amount of capital stock with which it was to commence business was $10,000; that the private property of the stockholders was not subject to the payment of corporate debts to any extent whatever; that the corporation was given perpetual existence; that the directors, by resolution passed by a majority of the whole board, could designate two or more of their number to constitute an executive committee, who could, to the extent provided in said resolution or in the by-laws of said company, have and exercise the power of the board of directors in the management and the business affairs of the company. The articles of incorporation were signed and sworn to by E. M. Kenton, R. T. Kenton, and C. F. Boyer, all of Wilmington, Delaware; and it is recited that there were issued to these persons forty, thirty, and thirty shares, respectively. It may be observed that the names of E. M. Gaines and the defendant W. D. Israel nowhere appear in the certificate of incorporation.

There is no showing that either Gaines or Israel ever signed valid subscriptions for stock in said corporation, ever had any stock issued to them, by assignment or otherwise, or ever transferred any accounts or assets of their coal company to the Delaware corporation, in exchange for stock. Israel participated in the affairs and operation of the Gaines Coal Company in Des Moines. On November 27, 1925, the plaintiff company, through

its Mr. Philby, part owner of said company, visited the office of Gaines and Israel, for the purpose of securing money for coal sold and delivered to them. It is undisputed that the following conversation took place. Gaines said to Philby: "You are after some money?" To which Philby replied: "I would like to have some money." Gaines then said to Israel: "We will give him a check of $300." Israel then went to the desk and wrote a check for $300, to wit:

"East Side State Bank
"Des Moines, Iowa———11-27———1925.
"Pay to the order of      Peacock Coal Co.,      $300.00
"Three hundred and no/100   -   -   -   -   -   -   Dollars.
"Gaines Coal Co.,
"W. D. Israel."

During this business transaction, there was talk relative to the quantity of coal that the Gaines Coal Company could handle. Gaines turned to Mr. Israel, and said: "How about two cars a week?" Mr. Israel said:

"Yes, we can handle two cars a week; just keep on shipping two cars a week."

Philby testified:

"I then left the office. I left Des Moines then, and came right back to Brazil, Iowa (where the plaintiff coal company had its office), and we loaded the coal and shipped a car right away."

This was the only occasion that the appellant Israel had any dealings personally with Mr. Philby.

It is further shown that Gaines and Israel, in the name of the Gaines Coal Company, carried its bank account in that name, and made deposits in the name of the Gaines Coal Company; that a check book containing checks bearing the name "Gaines Coal Company" was printed; and that a stock book was printed, containing blank certificates of stock, Nos. 1 to 50, inclusive, in the name of the "Gaines Coal Company," in the usual form of stock certificates. The shipments of coal involved on this appeal were made from December 4 to December 29, 1925.

It is also to be noticed that, on the 15th day of January, 1926, Gaines and Israel entered into a signed written contract, wherein it is recited:

"Whereas, the said parties to this agreement incorporated and have been operating as a corporation in the wholesale and retail coal business at 709 East Court Avenue, Des Moines, Iowa, under the name of 'Gaines Coal Company,' and whereas, the said party of the first part [Israel] has invested in said business the sum of $3,800 including unpaid salary, and for which the corporate stock of said concern was to be issued to the first party which corporate stock has never been issued up to this date, and, whereas, the parties hereto have agreed and by these presents do agree that the party of the first part will sell his interest in said business to the party of the second part for the sum of $3,800," etc.; and for the purpose of carrying out this agreement, certain stipulations, covenants, and obligations were entered into and assumed by each party.

Israel did take as security from Gaines, under the terms of this contract, "book accounts of the second party growing out of said coal business to the sum of $4,000, which said accounts shall be new, live, and good accounts against responsible parties and collectible without suit, and the same shall be delivered and placed in the custody and keeping of the said trustee" named and appointed in said contract.

It may be pertinent to inquire: What was the source of these "new, live, and good accounts?" There is but one answer. These are the accounts as shown by the books of the Gaines Coal Company, operated by Israel and Gaines, and representing, in part at least, coal delivered by plaintiff and sold by them to their customers.

At this point it may be well to note the essential allegations in the answer of the defendant Israel. In the first instance, he denies that the Gaines Coal Company is, or at any time has been, a copartnership, composed of himself and E. M. Gaines. In an amendment to his answer he recited the agreement between himself and Gaines to incorporate a business under the name of the Gaines Coal Company, and that, in pursuance of said agreement, they procured a charter of incorporation from the state of Delaware, and then admits that a permit by said Gaines Coal Company, a Delaware corporation, to transact business in the state of Iowa, was not obtained from the state of Iowa; then alleges that the charter of incorporation issued to said Gaines Coal Company by the state of Delaware exempts the private property

of the stockholders in said corporation from liability for corporate debts; and further alleges that the failure of said corporation to comply with the laws of the state of Iowa in obtaining a permit for the purpose of transacting business does not render the individual stockholder in said corporation liable for the corporate debts thereof.

The difficulty of the application of the defendant's contentions is that the record conclusively shows that neither Israel nor Gaines, the promoters of the purported Delaware corporation, was a stockholder. They were simply promoters, but their intent is plain. They had no authority to transact business in the state of Iowa on behalf of the Delaware corporation. They did act, subsequently to the issuance of the certificate of incorporation, but upon their own initiative, and with full knowledge that said Delaware corporation had not complied with the laws of Iowa for the transaction of business in Iowa. It cannot be questioned that the state of Iowa has the undoubted right to say whether foreign corporations shall be permitted to do business here at all, and, if such permission is granted, it is upon such terms as the state shall prescribe. Sections 8420 to 8432, inclusive, Code of 1924. See *American Fid. Co. v. Bleakley,* 157 Iowa 442; *Sparks v. National Masonic Acc. Assn.,* 100 Iowa 458, 465; 14-a Corpus Juris 1215 *et seq.*

The liability of Gaines and Israel for coal sold and delivered to them by plaintiff may arise either from a partnership liability or an individual liability, independent of the partnership relation, or through a joint adventure. We are satisfied from the evidence that Gaines and Israel did contract with the plaintiff coal company. True, the plaintiff had no knowledge or intimation, prior to the commencement of this action, that the defendant coal company "claimed to be incorporated." This fact, however, is not determinative of the proposition herein involved. Under the facts of the instant case, there was no principal who could be made legally responsible, and an agent who undertakes to bind such a principal is individually liable. *Allen v. Pegram,* 16 Iowa 163. See, also, *Ryerson & Son v. Shaw,* 277 Ill. 524 (115 N. E. 650); *Lasher v. Stimson,* 145 Pa. St. 30 (23 Atl. 552).

In the instant case, the defendant in his answer sets up exemption, averring that the incorporation in Delaware and the

doing of business in this state under a claim of incorporation were sufficient to create his exemption from corporate liability. This claim is of no avail to him, although it may be viewed as a tacit admission that Gaines and Israel did business in this state, including the purchase of the coal sold and delivered by plaintiff to them. The Gaines Coal Company can be, for the purpose of this case, viewed as a trade name. The business was begun by these parties as a joint adventure, and it remained such, since they both knew that the Gaines Coal Company, as a Delaware corporation, was not legally authorized to do business in Iowa. The fact stands, however, that they did do business. Their contractual relations, as between themselves, are to be found in what they adopted in their agreement and by their subsequent conduct.

We deem it unnecessary to determine, under the instant facts, whether the statutory penalty, as provided by Section 8430, Code of 1924, implies a prohibition, although there are no prohibitory words in the statute. See *Pennypacker v. Capital Ins. Co.*, 80 Iowa 56; *Pangborn v. Westlake*, 36 Iowa 546. Nor do we deem it necessary to rule the liability of Israel as a partner, under the assumption that he is a stockholder. The cases are in decided conflict whether the failure of a foreign corporation to secure a permit in compliance with the laws of a state in which it is doing business renders the stockholders liable as partners. Affirming: *Springfield Grocery v. Devitt*, 126 Miss. 169 (88 So. 497); *Beal v. Childress*, 92 Kan. 109 (139 Pac. 1198); *National Bank of Wichita v. Spot Cash Coal Co.*, 98 Ark. 597 (136 S. W. 953); *Boyington v. Van Etten*, 62 Ark. 63 (35 S. W. 622); *Tribble v. Halbert*, 143 Mo. App. 524 (127 S. W. 618); *Smith v. Warden*, 86 Mo. 382; *Second Nat. Bank v. Hall*, 35 Ohio St. 158. Contra: *Taylor v. Branham & Co.*, 35 Fla. 297; *Cunnyngham v. Shelby*, 136 Tenn. 176 (188 S. W. 1147, L. R. A. 1917B 572); *Lynch v. Perryman*, 29 Okla. 615 (119 Pac. 229, Ann. Cas. 1913A 1065); *Hill v. Beach*, 12 N. J. Eq. 31.

We conclude that the trial court properly ruled the plaintiff's motion for a directed verdict, and the judgment entered is, therefore,—*Affirmed.*

EVANS, ALBERT, and WAGNER, JJ., concur.

STEVENS, C. J., and MORLING and KINDIG, JJ., specially concur.

MORLING, J. (specially concurring).—On this record, the coal was sold to Gaines and Israel, and purchased by them. They have failed to show that they were incorporated, or that the Delaware corporation known as "Gaines Coal Company" was doing business at the time and place of purchase, or was the purchaser of the coal. The Gaines Coal Company was an entity with which, on the evidence, Gaines and Israel had no legal connection, and with which they had no legal relationship, and for which they could not be legally acting, and, on the record, were not acting. I think it is immaterial what the relationship between Gaines and Israel was, so long as it is plain that they were the purchasers of the coal, and, on the record, must necessarily have been purchasers in their own behalf. This, it seems to me, is the only material question, and decisive of the controversy.

STEVENS, C. J., and KINDIG, J., join in this special concurrence.