## ED. WELCH v. WILLIAM SPIES, Appellant.

**Sale:** DELIVERY. Plaintiff sold to defendant not less than sixteen hundred nor more than twenty-three hundred bushels of corn at so much a bushel, and received fifty dollars of the purchase money. The corn was in two cribs, one containing sixteen hundred bushels intact, and the other, which had been opened, about seven hundred bushels. Plaintiff reserved the right to retain two hundred or three hundred bushels, if he needed them, and a third party was entitled to fifty bushels. Before any corn had been separated from the mass the entire lot was burned. *Held*, that, as to sixteen hundred bushels, at least, the title had passed to defendant.

| | |
|---|---|
| 103 | 389 |
| 106 | 370 |
| 103 | 389 |
| 112 | 588 |
| 103 | 389 |
| 115 | 418 |
| 103 | 389 |
| 117 | 647 |
| 103 | 389 |
| 120 | 403 |
| e121 | 242 |
| 103 | 389 |
| 129 | 178 |
| 129 | 580 |
| 103 | 389 |
| 142 | 591 |
| 142 | 596 |
| 103 | 389 |
| 144 | 738 |

SAME. The fact that part of the corn was to be shelled and delivered by plaintiff at a place designated by the defendant, did not prevent the title from passing.

SAME. The intent of the parties is of controlling importance in determining whether or not the title to personal property, the subject of the contract of sale, has passed to the purchaser, and the fact that it remains to weigh or measure the property sold is not conclusive as to such intent.

EVIDENCE. Evidence that the seller of personal property notified the wife of the person having the possession thereof that he had sold the same is admissible on the question as to whether the title had passed before the destruction of the property, as tending to show what he did to complete delivery.

Cross-Examination. Plaintiff in an action to recover the purchase price of personal property, in which defendant has pleaded that the property was raised on the land of a third person cannot be cross-examined with reference to a lien thereon for unpaid rent at the time of the sale, where he did not touch on that subject in his direct examination.

*Appeal from Cass District Court.*—HON. A. B. THORNELL, Judge.

THURSDAY, OCTOBER 21, 1897.

Action at law to recover the unpaid portion of the price of corn alleged to have been sold and delivered by the plaintiff to defendant. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*Willard & Willard* and *Jas. B. Bruff* for appellant.

*Curtis & Follett* for appellee.

Robinson, J.—The plaintiff claims that in the latter part of July, in the year 1894, he sold and delivered to the defendant two thousand three hundred bushels of corn contained in two cribs, at the agreed price of fifty cents per bushel. The defendant admits that he entered into a verbal agreement with the plaintiff for the purchase of not less than one thousand, six hundred nor more than two thousand bushels of corn at the price stated, and that fifty dollars were paid to the plaintiff by virtue of the agreement; but denies that the corn was delivered, and alleges that the plaintiff has failed and refused to perform his part of the agreement. Soon after the sale is alleged to have been made, and while the corn remained in the crib, it was destroyed by fire. The verdict was for eight hundred and twenty dollars and ninety-three cents, and the judgment rendered was for that sum, with interest and costs.

I. The chief controversy between the parties to this action relates to the delivery of the corn. When the agreement in question was made, one crib, which had not been opened, contained one thousand, six hundred bushels. Corn had been taken from the other crib, but it then contained about seven hundred bushels. The grounds upon which the defendant insists that the corn was not delivered are stated to be that he purchased but a part of the corn in the two cribs, and there was never any separation of the part he

purchased from the remainder; that the plaintiff reserved the right to retain two or three hundred bushels for his own use, and that he had not set it apart; that a man named Hunter was entitled to fifty bushels of corn, which had not been separated from the mass; and that five or six hundred bushels were to be shelled by the plaintiff, and delivered to a brother of the defendant, and that had not been done. There is some evidence to sustain the claims thus made. But the evidence on the part of the plaintiff tends strongly to show that by the agreement and the payment of the fifty dollars, the parties intended to transfer to the defendants the title to all the corn, subject to the right of the plaintiff to retain for his own use two or three hundred bushels from the broken crib, and that when the money was paid the defendant said to the plaintiff: "The money is yours, and the corn is mine," to which the plaintiff assented. Some claim is made that the plaintiff was to haul the corn to the place where the defendant wished to have it delivered, but the jury was authorized to find that, although the plaintiff was to render some assistance in hauling, that was not to constitute any part of the delivery. The rule in regard to the sale and delivery of personal property was stated in *Cook v. Logan,* 7 Iowa, 142, to be "that, where some act remains to be done in relation to the articles which are the subject of the sale,—as that of weighing or measuring, or, as in this case, that of separating and setting them apart from the bulk, so that they may be distinguished and identified,—the performance of such act is a prerequisite, and until it is performed the property does not pass to the vendee." That rule was, in effect, applied or approved in *Courtright v. Leonard,* 11 Iowa, 32; *Rosenthal v. Risley,* 11 Iowa, 541; *McClung v. Kelley,* 21 Iowa, 509; *Snyder v. Tibbals,* 32 Iowa, 448; *Harwick*

*v. Weddington,* 73 Iowa, 303; *Mellinger v. Hunt,* 94 Iowa, 351. But the title to property which is the subject of a contract of sale may pass at once, even though something remain to be done to ascertain and fix the rights of the parties,—as, to weigh or measure the property sold. The intent of the parties is of controlling importance. In *Bank v. Reno,* 73 Iowa, 146, it was said: "The question whether the title to personal property which is the subject of a contract has passed to the vendee under the agreement is one of intent. If there has been an actual delivery, and nothing remains to be done to ascertain the price or quality of the article, the strong presumption is that the intention was to pass the title." In *Riddle v. Varnum,* 20 Pick. 283, it was said: "But in the case of sales where the property to be sold is in a state ready for delivery, and the payment of money, or giving security therefor, is not a condition precedent to the transfer, it may well be the understanding of the parties that the sale is perfected, and the interest passes immediately to the vendee, although the weight or measure of the article sold yet remains to be ascertained. Such a case presents a question of the intention of the parties to the contract." See, also, *Brown v. Wade,* 42 Iowa, 649; *Hurd v. Cook,* 75 N. Y. 454; *Kimberly v. Patchin,* 19 N. Y. 330; *Mackellar v. Pillsbury,* 48 Minn. 396 (51 N. W. Rep. 222); *Leonard v. Davis* (66 U. S.), 1 Black, 476; *Cushman v. Holyoke,* 34 Me. 292; *Waldron v. Chase,* 37 Me. 414; 21 Am. & Eng. Enc. Law, 476, *et seq.* We are of the opinion that the jury was authorized to find that the parties to the contract in question fully intended that the title should pass to the vendee at the time the contract was made, excepting as to the corn which the plaintiff reserved for himself and Hunter. That, however, was to be taken from the broken crib. If a part of the corn was to be shelled and taken by a brother of the defendant, that fact did not prevent the transfer

of title which the parties intended. The plaintiff had not decided what quantity of corn he would retain; and, if it be conceded that for that reason the title to the corn in the broken crib did not pass, there was nothing to prevent the absolute transfer of title to the corn in the other crib, for the reason that no part of it was reserved, and nothing remained to do but to ascertain the number of bushels contained in the crib. The jury evidently found that the agreement was effectual to transfer the title to that corn only, for the reason that its verdict, taken with the charge of the court, shows that no allowance was made for any corn in the broken crib. The evidence to sustain that finding is ample.

II. The defendant alleged in his answer that the corn in controversy had been raised on land owned by one Erickson, who had a landlord's lien on the corn for unpaid rent; and for that reason the plaintiff had no right to sell the corn. The plaintiff testified as a witness. He was asked on cross-examination in regard to the rent. An objection to a question which inquired as to the amount of rent due was sustained, and of that ruling the defendant complains. It was based on the ground that the question was not proper cross-examination, and, we think, was correct.

III. It appears that a man named Hunter had possession of the farm where the cribs containing the corn in question were at the time it was sold, and that he had charge of the corn. The plaintiff testified that when the sale was made he went to that farm, but that Hunter was gone, and he spoke to Hunter's wife. He was then asked if he notified Mrs. Hunter that he had sold the corn to the defendant, and to let him have it when he came for it, and was permitted to answer, notwithstanding an objection of the defendant, "Yes, I notified her that I had sold the corn to Mr. Spies." Mrs. Hunter was also permitted to testify that the plaintiff, at the time and place stated, told her that

he had sold the corn to the defendant. The defendant complains of these rulings on the ground that the statement testified to was not made in his presence, and that it tended to corroborate the plaintiff's claims in regard to the sale, and was prejudicial. We do not understand that it was proven to establish a sale, but to show what the plaintiff did to complete the delivery of the corn. What was said to Mrs. Hunter was designed for her husband, and, under the circumstances of the case, was properly given in evidence.

IV. It appears that in February, 1893, the plaintiff executed to his mother a mortgage upon all of his crops to be grown on the Erickson farm during that year. The mortgage purported to secure a promissory note for the sum of one thousand and seventy dollars, was recorded, and does not appear to be satisfied of record. It was pleaded by the defendant to show that the plaintiff did not have a right to sell the corn in question. The plaintiff testified that he had executed the mortgage, and caused it to be recorded, before he told his mother of it; and that, when informed in regard to it, she had refused to accept it. The defendant makes some objection to his testimony upon that point, but, as he does not argue the objection, we need not notice it further. This is true of other objections referred to by the defendant.

Paragraphs of the charge to the jury are criticised, but, so far as the objections thus made are material, they are disposed of by what we have already said. There does not appear to be any sufficient ground for disturbing the judgment of the district court, and it is AFFIRMED.